UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BRATSET, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DAVIS JOINT UNIFIED SCHOOL DISTRICT, et al.,<br><br>　　　　Defendants. | No. 2:16-cv-0035 KJM DB PS<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Laura Bratset is proceeding pro se in this action. Therefore, the matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the court are plaintiff's motion for summary judgment and defendant Winters Joint Unified School District's ("WJUSD") cross-motion for summary judgment.[1] Plaintiff's second amended complaint alleges that the defendant violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, with respect to the education of plaintiff's minor child, ("Student").

For the reasons stated below, the undersigned will recommend that plaintiff's motion for summary judgment be denied and defendant's cross-motion for summary judgment be granted.

---

[1] Defendant Davis Joint Unified School District was dismissed from this action without prejudice on February 2, 2018. (ECF No. 75.)

1

## PROCEDURAL BACKGROUND

Plaintiff Laura Bratset, proceeding pro se, commenced this action on January 6, 2016, by filing a complaint and an application to proceed in forma pauperis. (ECF No. 1.) Plaintiff's application to proceed in forma pauperis was denied on March 24, 2016, and on April 5, 2016, plaintiff paid the applicable filing fee. (ECF Nos. 3 & 4.) On April 18, 2016, plaintiff filed a first amended complaint. (ECF No. 8.) On December 12, 2016, the undersigned issued an order dismissing plaintiff's first amended complaint and granting plaintiff leave to file a second amended complaint. (ECF No. 44.)

Plaintiff filed a second amended compliant on April 27, 2017. (ECF No. 50.) Defendant WJUSD filed a motion to dismiss on May 19, 2017. (ECF No. 55.) On December 19, 2017, the undersigned issued findings and recommendations recommending that defendant's motion to dismiss be denied with respect to plaintiff's challenge to the December 8, 2015 decision of the Office of Administrative Hearings ("OAH"). (ECF No. 73.) Those findings and recommendations were adopted in full by the previously assigned District Judge on February 2, 2018.[2] (ECF No. 75.)

On February 16, 2018, defendant filed an answer. (ECF No. 77.) Defendant lodged a copy of the administrative record on June 27, 2018. (ECF No. 97.) Plaintiff filed a motion for summary judgment on October 1, 2018. (ECF No. 109.) Defendant filed a cross-motion for summary judgment on October 5, 2018. (ECF No. 110.) The parties filed their respective oppositions on October 26, 2018. (ECF Nos. 112 & 113.) Defendant filed a reply on November 2, 2018. (ECF No. 115.) Plaintiff filed a reply on November 6, 2018. (ECF No. 117.) The motions were taken under submission on December 4, 2018. (ECF No. 118.)

## LEGAL STANDARDS

The goal of the IDEA, 20 U.S.C. § 1400 *et seq.*, is "'to ensure that all children with disabilities have available to them a free appropriate public education [or 'FAPE'] that emphasizes special education and related services designed to meet their unique needs and

---

[2] On February 16, 2018, the matter was reassigned from the previously assigned District Judge to the currently assigned District Judge. (ECF No. 76.)

prepare them for further education, employment, and independent living.'" A.G. v. Paradise Valley Unified School Dist. No. 69, 815 F.3d 1195, 1202 (9th Cir. 2016) (quoting Mark H. v. Lemahieu, 513 F.3d 922, 928 (9th Cir. 2008)). "The free appropriate public education required by the Act is tailored to the unique needs of the handicapped child by means of an 'individualized educational program' (IEP)." Hendrick Hudson Cent. Sch. Dist. Bd. Of Educ. v. Rowley, 458 U.S. 176, 181 (1982) (quotation and citation omitted).

"The IEP is a written document that states the child's present levels of academic achievement and functional performance, creates measurable annual goals for the child, describes the child's progress toward meeting the annual goals, and explains the services that will be provided to the child to help him advance toward attaining his particular goals." Timothy O. v. Paso Robles Unified School Dist., 822 F.3d 1105, 1111 (9th Cir. 2016). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1, 137 S. Ct. 988, 999 (2017).

"Each IEP is crafted by a team of the individuals most critical to a child's success, including parents, teachers, and school officials." Rachel H. v. Department of Education Hawaii, 868 F.3d 1085, 1088 (9th Cir. 2017). The formulation of the IEP should be "a cooperative process between parents and schools that culminates in the creation of an [IEP] for every disabled student." M.M. v. Lafayette School Dist., 767 F.3d 842, 851 (9th Cir. 2014).

"In the event a student's parents believe that the district is not complying with the IDEA's procedural or substantive requirements, statutory safeguards entitle the parents to 'an impartial due process hearing' conducted either by the state or local educational agency.'"[3] Cupertino Union School District v. K.A., 75 F.Supp.3d 1088, 1091 (N.D. Cal. 2014) (quoting Ojai Unified School Dist. V. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993)). "Any party aggrieved by the findings and decision" reached by a due process hearing decision "shall have the right to bring a

---
[3] In California, these due process hearings are conducted by the OAH, a state agency independent of the Department of Education. See M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1085, 1092 (9th Cir. 2012); Everett H. ex rel. Havey v. Dry Creek Joint Elementary School Dist., 5 F.Supp.3d 1184, 1187 (E.D. Cal. 2014).

3

civil action with respect to the complaint . . . in a district court of the United States."[4] 20 U.S.C. § 1415(i)(2).

After the commencement of such a civil action, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Id. "[C]omplete de novo review of the administrative proceeding is inappropriate." Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 817 (9th Cir. 2007). And "the burden of persuasion rests with the party challenging the ALJ's decision." L.M. v. Capistrano Unified School Dist., 556 F.3d 900, 910 (9th Cir. 2009).

"Because Congress intended states to have the primary responsibility of formulating each individual child's education, this court must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies.'" Hood v. Encinitas Union School Dist., 486 F.3d 1099, 1104 (9th Cir. 2007) (quoting Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 888 (9th Cir. 2001)). "'How much deference to give state educational agencies, however, is a matter for the discretion of the courts.'" J.W. ex rel. J.E.W. v. Fresno Unified School Dist., 626 F.3d 431, 438 (9th Cir. 2010) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). Nonetheless, the amount of deference given should increase when the administrative decision is "'thorough and careful[.]'"[5] Ashland School

---

[4] As noted above, plaintiff is proceeding pro se. The right to represent oneself pro se is personal to the plaintiff and does not extend to other parties. Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008); see also Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself.") Thus, "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997). However, "[t]he IDEA also 'grants parents independent, enforceable rights' that are not limited to procedural matters, including 'the entitlement to a [FAPE] for the parents' child.'" R.F. v. Cecil County Public Schools, 919 F.3d 237, 248 (4th Cir. 2019) (quoting Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 533 (2007)); see also Simon v. Hartford Life, Inc., 546 F.3d 661, 666 (9th Cir. 2008) ("Based on the statutory scheme, Winkelman held that parents have their own, enforceable right under the IDEA to the substantive adequacy of their child's education; therefore, parents may prosecute IDEA claims on their own behalf.").

[5] Here, the ALJ's December 8, 2015 decision is a 30-page order that carefully, thoroughly, and correctly details the relevant history, evidence, and issues in dispute, with proper legal analysis supported by citations to case law and statutes. Accordingly, "[u]nder these circumstances," the undersigned finds that the ALJ's decision should be afforded "significant weight." Deer Valley

4

Dist. v. Parents of Student R.J., 588 F.3d 1004, 1008-09 (9th Cir. 2009) (quoting Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir. 1996)); see also Capistrano, 556 F.3d at 908 ("A district court shall accord more deference to administrative agency findings that it considers 'thorough and careful.'"). Moreover, courts "are not free 'to substitute [our] own notions of sound educational policy for those of the school authorities which [we] review.'" Amanda J., 267 F.3d at 887-88 (quoting Rowley, 458 U.S. at 206).

## ANALYSIS

The court previously advised plaintiff that this action was proceeding on plaintiff's challenge to the December 8, 2015, OAH decision addressing the following specific questions:

1. Did [WJUSD] fail to offer Student a FAPE in the February 14, 2014, individualized education program by failing to:

   a. Include present levels of academic achievement and functional performance;

   b. Include annual measurable goals relating to the special education services offered;

   c. Include objective strategies to evaluate progress toward goals;

   d. Include a description of how progress toward meeting annual goals would be measured;

   e. Include a statement of when progress reports would be provided;

   f. Consider less restrictive placement options than a special day class;

   g. Offer an appropriate placement in the least restrictive environment; and

   h. Provide a means by which to measure whether or not Student would obtain educational benefit?

2. Did [WJUSD] fail to offer Student a FAPE in the February 13, 2015 IEP, completed on April 14, 2015, by failing to:

   a. Consider Student's privately obtained reading assessment;

////

---

Unified School Dist. v. L.P. ex rel. Schripsema, 942 F.Supp.2d 880, 882 (D. Ariz. 2013).

b. Offer Student one-to-one instruction as proposed by an independent assessor; and

            c. Include the name of the specific reading program that would be provided?[6]

(ECF No. 73 at 10.) Rather than apply the above format and address these specific issues, plaintiff's motion for summary judgment asserts ten sequentially numbered arguments.[7] (Pl.'s MSJ (ECF No. 109) at 3-5.[8])

However, plaintiff's second argument—that WJUSD obstructed justice in violation of 18 U.S.C. § 1519—was previously dismissed from this action. (Pl.'s MSJ (ECF No. 109) at 3; ECF No. 73 at 6-13; ECF No. 75.) Plaintiff's seventh and eighth arguments concern the conduct of Davis Joint Unified School District ("DJUSD"). (Pl.'s MSJ (ECF No. 109) at 4.) DJUSD, however, was previously dismissed from this action after plaintiff failed to comply with Rule 4(m) of the Federal Rules of Civil Procedure and with the court's prior orders. (ECF No. 73 at 12.) And plaintiff's ninth and tenth arguments are collateral attacks on prior rulings of this court. (Pl.'s MSJ (ECF No. 109) at 4-5.)

The undersigned will analyze below those remaining relevant arguments—plaintiff's claims 1, 3-6—as they pertain to the December 8, 2015, OAH decision.[9] For clarity, the

---

[6] As to the question of whether WJUSD failed to offer Student a FAPE in the February 14, 2014, individualized education program, the OAH decision found that WJUSD "procedurally erred" in certain respects but "did not deprive Student of a FAPE[.]" (AR at 769-70.) As to the question of whether WJUSD failed to offer Student a FAPE in the February 13, 2015 IEP, completed on April 14, 2015, the OAH decision found that WJUSD did not err or fail to offer a FAPE. (Id. at 770.)

[7] Within those ten numbered arguments are numerous vague and conclusory arguments that the undersigned has attempted to address where possible and appropriate.

[8] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[9] WJUSD's motion for summary judgment argues that because "the evidence strongly suggests Ms. Bratset did not and has not ever intended to enroll Student in a District public school, the Distrist had no obligation to make any offers of FAPE[.]" (Def.'s MSJ (ECF No. 112) at 11); see generally District of Columbia v. Vinyard, 971 F.Supp.2d 103, 110 (D. D.C. 2013) ("Granting the agency's interpretation the substantial deference it is owed, the Court finds that District was relieved of any obligation to provide G.V. with a FAPE for the 2010–2011 school year at the point the Defendants declined the offer of services and clearly expressed their intent to keep G.V.

undersigned will refer to the arguments consistent with the number assigned by plaintiff's motion for summary judgment.

**Claim No. 1. Whether Plaintiff Received a Fair and Unbiased Hearing**

Plaintiff appears to argue that the Administrative Law Judge ("ALJ") was biased and unfair, possibly because the ALJ previously worked at the same law firm as defendant's counsel. (Pl.'s MSJ (ECF No. 109 at 3, 5.) However, the parties appeared before the ALJ for a hearing on October 22, 2015. (Administrative Record ("AR") at 869.) The transcript from that hearing reflects that the ALJ alerted the parties to this issue, stating:

> . . . I'm going to go ahead and just make a disclosure to the parties that many years ago, 2001 to 2003, I worked at a law firm that Ms. Tomsky worked at. I was in the Southern California office and she was in the Northern California office of Lozano Smith. I left the firm in 2003, or January of 2004. I don't know when Ms. Tomsky left, and to my knowledge I don't think we've had a direct conversation until I was a judge. But I wanted to go ahead and make that disclosure. And if Parent wants to make a challenge for cause, I'm the person that would hear that, and so give you a chance to ask me questions if you'd like.

(AR. at 874-75.) After this disclosure from the ALJ, plaintiff was provided an opportunity to question the ALJ about the disclosure, and plaintiff responded "No questions." (Id. at 875.)

Moreover, the alleged evidence of bias raised in plaintiff's motion fails to establish any bias on the part of the ALJ. For example, plaintiff argues that the "ALJ provides a contradiction to the facts" by findings that "Students teacher reported that student was the lowest performer . . . . frustration level . . . . . . . . . . his classmates." (Pl.'s MSJ (ECF No. 109) at 11.) According to plaintiff, "the independent assessment report by Dr. Grimes, provides proof the ALJ has erred in her decision." (Id.)

However, the January 15, 2015, Confidential Psychoeducational Evaluation performed by Dr. Jennifer Grimes, Ph.D., is consistent with the ALJ's characterization, stating that "[r]ecords . . . noted that teachers had concerns about [Student's] academic progress in kindergarten" and

---

enrolled in private school."). The ALJ's decision, however, rejected this argument after finding that plaintiff expressed an intent to enroll Student in a public school. (AR at 787-88.) Because each of plaintiff's claims fail, the undersigned need to not address defendant's argument.

7

"ability to 'keep pace with the kindergarten curriculum." (AR. at 442.) And that Student's first grade report card reflected that Student "struggled[.]" (Id. at 443.)

Plaintiff also criticizes the ALJ for spending "extensive time commenting on and praising the credibility of school district witnesses" while failing "to consider the evidence and the consequences of their failures[.]" (Pl.'s MSJ (ECF No. 109) at 5.) However, the ALJ's "credibility-based findings deserve deference unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." Carlisle Area School v. Scott P. By and Through Bess P., 62 F.3d 520, 528 (3rd Cir. 1995).

Plaintiff also argues these witnesses "failed to properly assess" Student and "failed to make appropriate placement recommendations" by citing to the opinion of another professional, Dr. Grimes. (Pl.'s MSJ (ECF No. 109) at 6-7.) However, the mere fact that another professional reached a contrary opinion does not alone establish that the first opinion was the result of a failure to properly assess. And it is the province of the ALJ to weigh conflicting evidence in reaching a decision. See W.S. ex rel. C.S. v. Rye City School Dist., 454 F.Supp.2d 134, 145 (S.D. N.Y. 2006) ("The problem with plaintiffs' argument is that this sort of weighing of conflicting evidence is exactly the sort of area in which I am required to defer to the SRO—the education professional—rather than pretend to transform myself into some sort of educational specialist.").

Plaintiff argues that "Davis resource specialist" Patricia Newman provided an "assessment protocol contain[ing] two student names and assessment." (Id. at 8) (emphasis added). Newman's assessment did in fact reflect the names of two students. The ALJ noted that Newman testified that Newman shared an office with a colleague, the colleague took the assessment form from Newman's desk, and wrote another student's name on the form. (AR. at 773.) Newman, however, took back the form, crossed-out the other student's name, and used the assessment to evaluate plaintiff's minor child. (Id.) The ALJ found Newman's testimony that the assessment was completed by Student persuasive and convincing. (Id.) Plaintiff has presented no evidence to refute the ALJ's credibility determination.

////

Finally, plaintiff appears to argue that evidence of the ALJ's bias can be found in the ALJ's October 5, 2015 order dismissing some of plaintiff's claims due to the running of the statute of limitations. (Pl.'s MSJ (ECF No. 109) at 12; AR. at 282-86.) Plaintiff argues that plaintiff "was assured by the California Department of Education that the complaints I presented in the CDE Compliance Complaint . . . would be addressed in due process" and thus the running of the statute of limitations should have been tolled pending "Discovery." (Pl.'s MSJ (ECF No. 109) at 12.) As acknowledged by plaintiff, however, the ALJ's order addressed a motion to dismiss brought by DJUSD—not a motion to dismiss filed by defendant WJUSD. (Id.)

Moreover, "Congress amended the IDEA in 2004 to add a two-year statute of limitations period that is now codified in two different provisions of the IDEA[.]" Avila v. Spokane School District 81, 852 F.3d 936, 940 (9th Cir. 2017) (citing 20 U.S.C. § 1415(b)(6)(B) and 20 U.S.C. § 1415(f)(3)(C)). "[T]he IDEA's statute of limitations is triggered when 'the parent or agency knew or should have known about the alleged action that forms the basis of the complaint[.]'" Id. at 944; see also Ms. S. v. Regional School Unit 72, 916 F.3d 41, 50 (1st Cir. 2019) ("We hold that the IDEA has a single two-year statute of limitations regulating the amount of time to file a complaint after the reasonable discovery date.").

Here, the ALJ found that plaintiff's challenge to DJUSD's February 2013 assessment was beyond the statute of limitations. (AR. at 285.) Plaintiff argues that this claim was not "discovered" until a later doctor's assessment supported plaintiff's "disagreement with the IQ 75 and placement recommendations[.]" (Pl.'s MSJ (ECF No. 109) at 13.) However, while the later doctor's assessment may have provided support for plaintiff's claim, the discovery of the claim—plaintiff's disagreement with the February 2013 assessment—nonetheless occurred when plaintiff received the assessment.[10]

Accordingly, the undersigned recommends that plaintiff's motion for summary judgment be denied as to this claim.

---

[10] Plaintiff also appears to argue that the February 15, 2013 IEP failed to provide "goals or any of the necessary components required by law." (Pl.'s MSJ (ECF No. 109) at 13.) Assuming arguendo that this claim was not barred by the statute of limitations, as explained below, the mere failure to include measurable goals does not result in the denial of a FAPE.

9

**Claim No. 3. February 14, 2014 IEP Procedural Errors**

The ALJ's December 8, 2015 decision found with respect to the February 14, 2014 IEP that WJUSD

> . . . procedurally erred by failing to include annual measurable goals, objective strategies to evaluate progress towards goals, a description of how progress toward goals would be measured, a statement of when progress reports would be provided or a means by which to measure whether or not Student was making progress. However, these errors did not deprive Student of a FAPE because they did not result in a loss of educational opportunity or constitute a serious infringement of Parent's opportunity to participate in the IEP process. The February 2014 IEP also included present levels of academic achievement and functional performance, and the IEP team considered a continuum of placement options and offered Student placement in the least restrictive environment.

(AR. at 769-70.)

Plaintiff argues that the ALJ's decision "disregarded the Actual Law, the IDEA, and made an inaccurate and factually incorrect interpretation of the ACT." (Pl.'s MSJ (ECF No. 109) at 18.) Plaintiff asserts that "[a] school district which provides an IEP offer of a FAPE which does not contain the necessary components as required by law, is in denial of FAPE." (Id. at 19.)

There is no disputing that an IEP must contain "a statement of measurable annual goals, including academic and functional goals[.]" 20 U.S.C. § 1414(d)(1)(A)(i)(I). However, "[n]ot every procedural violation . . . is sufficient to support a finding that the child in question was denied a FAPE." Amanda J., 267 F.3d at 892 (quotation omitted). In this regard, "[w]hile some procedural violations of the IDEA may be harmless, such errors constitute a denial of a free appropriate public education if they seriously impair the parents' opportunity to participate in the IEP formulation process, result in the loss of educational opportunity for the child, or cause a deprivation of the child's educational benefits." Timothy O, 822 F.3d at 1124. "A procedural error results in the denial of an educational opportunity where, absent the error, there is a 'strong likelihood' that alternative educational possibilities for the student 'would have been better considered.'" Doug C. v. Hawaii Dept. of Educ., 720 F.3d 1038, 1047 (9th Cir. 2013) (quoting M.L. v. Federal Way Sch. Dist., 394 F.3d 634, 657 (9th Cir. 2005)).

////

Here, plaintiff has failed to allege, let alone establish, that the mere failure to include measurable goals in the February 14, 2014 IEP, impaired plaintiff's opportunity to participate in the IEP formulation process, resulted in the loss of educational opportunity for Student, or caused a deprivation of Student's educational benefits. Moreover, the ALJ's finding was based on sound reasoning and specific evidence, stating:

> Here, the weight of the evidence did not establish that the lack of goals, or of measurements of progress on goals or instructional objectives, resulted in a loss of educational opportunity for Student. . . . all of the evidence consistently showed that Student required intensive instructional intervention throughout the school day, including specialized academic instruction in reading, math, and language and speech services, and Student provided no persuasive evidence that he required more or different services than offered in the February 14, 2014 IEP. The opinions of Ms. D'Angelo and Ms. Newman, which were persuasive and uncontradicted, established that the services offered, and a special day class setting, would have appropriately addressed Student's educational needs in reading fluency, reading comprehension, math, receptive language, expressive language, pragmatics and articulation, and would have provided Student with a FAPE.
>
> Similarly, the weight of the evidence did not establish that the lack of goals, or of measurements of progress on goals or instructional objectives, constituted a serious infringement of Parent's opportunity to participate in the IEP process. Parent was at the February 14, 2014 IEP team meeting, and participated in the discussion and development of Student's IEP. Parent made no objection to the lack of goals, and instead wanted to immediately observe a special day class, which Winters arranged mere days after the meeting. The February 14, 2014 IEP team expressly contemplated reconvening the meeting to draft measurable annual goals, components of which would include measures of progress and procedures for determining if instructional objectives were achieved, preferably in fall 2014 with Student's teachers in place. However, before a second meeting could be arranged, Parent informed Winters on March 5, 2014 that she would not consent to special education and related services from any school district but Davis. The absence of goals did not delay or stop Parent from seeking an interdistrict transfer into Davis' special day class for the same specialized academic instruction and speech services. This evidence established that the failure of Winters to include annual goals, objective strategies to evaluate progress towards those goals, a description of how progress would be measured, when progress reports would be provided, or the means by which educational benefit would be measured in the IEP at the February 2014 meeting did not constitute a serious infringement of Parent's opportunity to participate in the IEP process.
>
> The IEP of February 14, 2014, did include present levels of academic achievement and functional performance, but lacked annual measurable goals, objective strategies to evaluate progress towards

> goals, a description of how progress towards annual goals would be measured, a statement of when progress reports would be provided, or a means by which it would be measured whether Student was receiving educational benefit, which constituted a procedural error. However, Student did not meet his burden of proving by a preponderance of the evidence that the procedural errors in the February 14, 2014 IEP impeded Student's right to a FAPE, significantly impeded Parent's opportunity to participate in the decision making process regarding the provision of a FAPE, or deprived Student of educational benefits.

(AR. at 790-91.)

Under such circumstances, the undersigned cannot find error with respect to the ALJ's determination. See Adam J. ex rel. Robert J. v. Keller Independent School Dist., 328 F.3d 804, 812 (5th Cir. 2003) ("Given Adam's parents' active participation in the crafting of his IEPs, and the absence of any demonstrable 'lost educational opportunity,' we conclude that the procedural requirements of the IDEA were substantially satisfied, even if some information was omitted from Adam's IEP"); Doe By and Through Doe v. Defendant I, 898 F.2d 1186, 1190 (6th Cir. 1990) ("to say that these technical deviations from section 1401(19) render appellant's IEP invalid is to exalt form over substance"); P.K. ex rel. S.K. v. New York City Dept. of Educ. (Region 4), 819 F.Supp.2d 90, 109 (E.D. N.Y. 2011) (deferring to ALJ's finding that failure to include measurable goals "did not rise to the level of a denial of a FAPE" given reliance on specific evidence in the record); G.N. v. Board of Educ. of Tp. of Livingston, Civil Action No. 05-3325 (JAG), 2007 WL 2265035, at *7 (D. N.J. 2007) ("The failure to include goals and objectives violates IDEA. However, to elevate this failing to a denial of a FAPE would be elevating form over substance.").

Accordingly, the undersigned recommends that plaintiff's motion for summary judgment be denied as to this claim.

**Claim No. 4    Evidence Contradicting February 14, 2014 IEP**

Plaintiff asserts that an "Independent Assessment Report, dated 1/28/2015, by Dr. Grimes" proved that "self contained Special Day Class is not an appropriate placement which the 2/14/2014 IEP indicates[.]" (Pl.'s MSJ (ECF No. 109) at 21.) As noted above, that Dr. Grimes

////

provided an opinion that contradicted other opinions is not proof of the falsity of those other opinions.

Moreover, pursuant to the "snapshot rule" we "judge an IEP not in hindsight, but instead based on the information that was reasonably available to the parties at the time of the IEP." Baquerizo v. Garden Grove Unified School District, 826 F.3d 1179, 1187 (9th Cir. 2016). Thus, even assuming arguendo that the January 28, 2015 report established that Special Day Class placement was not appropriate, the January 28, 2015 report was not available at the time of the February 2014 IEP team meeting.

Accordingly, the undersigned recommends that plaintiff's motion for summary judgment be denied as to this claim.

**Claim No. 5    February 15, 2013 & February 14, 2014 IEP**

In this claim plaintiff repeats challenges to WJUSD's IEP offers from February 15, 2013, and February 14, 2014. (Pl.'s MSJ (ECF No. 109) at 22.) However, as explained above, the February 15, 2013 IEP offer was not part of the ALJ's December 8, 2015 decision, as the claim was brought beyond the statute of limitations. And the undersigned has already found that plaintiff has failed to demonstrate any error with respect to the ALJ's finding that the February 14, 2014 IEP offer did not constitute the denial of a FAPE.

Accordingly, the undersigned recommends that plaintiff's motion for summary judgment be denied as to this claim.

**Claim No. 6    Failure to Include Reason for Special Day Class Placement**

Plaintiff argues that WJUSD's February 14, 2014 IEP offer "failed to include the reason for Special Day Class placement," which "is a serious procedural violation in denial of FAPE[.]" (Pl.'s MSJ (ECF No. 109) at 24.) "The IDEA requires that school districts offer placements in the 'least restrictive environment' ("LRE") available to meet a student's unique needs." Ravenswood City School Dist. v. J.S., 870 F.Supp.2d 780, 789 (N.D. Cal. 2012) (citing 20 U.S.C. § 1412(a)(5)(A)). The IDEA's requirement that student be placed in the least restrictive environment, ("LRE"), is sometimes referred to as "mainstreaming." See Sacramento City Unified Sch. Dist. v. Rachel H., 14 F.3d 1398, 1404 (9th Cir. 1994) (adopting multi-factor test to

determine appropriate level of "mainstreaming").

Even assuming arguendo that the failure to include the reason for LRE placement was a procedural violation, plaintiff has failed to demonstrate how the mere failure to include that reasoning impaired plaintiff's opportunity to participate in the IEP formulation process, resulted in the loss of educational opportunity for Student, or caused a deprivation of Student's educational benefits. Moreover, the February 14, 2014 IEP Team Meeting Notes provide the IEP Team's reasoning for the Special Day Class placement offer.

For example, Student's teacher noted that student "requires prompting and help for most work." (AR. at 426.) Student's reading performance was "lowest in the class, and at pre-primer level." (Id.) Comprehension was "a weakness," decoding required "100% assistance," and the teacher had "concerns about [Student's] frustration[.]" (Id.) A Resource Specialist stated that current testing found that Student's scores had "decreased slightly since last year," and that "[s]ome subtests could not be administered due to [Student's] low reading performance." (Id.) A Speech Pathologist assessed Student "with moderately severely reduced receptive language for basic concepts[.]" (Id.) According to the school psychologist, school staff saw Student's "degree of needs as significant" and opined that Student "would appear best served in an environment where he had daily remediation, throughout his day." (Id.)

Accordingly, the undersigned recommends that plaintiff's motion for summary judgment be denied as to this claim.

**CONCLUSION**

The undersigned has found that plaintiff should not be granted summary judgment on any claim of error.

Accordingly, IT IS HEREBY RECOMMENDED that:

    1. Plaintiff's motion for summary judgment (ECF No. 109) be denied;

    2. Defendant's cross-motion for summary judgment (ECF No. 110) be granted;

    3. The decision of the ALJ be affirmed in all respects; and

    4. This action be closed.

Within fourteen days after being served with these findings and recommendations, any

party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 20, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.pro se/bratset0035.msj.f&rs